UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Earl Williams<br>1009 E. Cliveden Street Apt 1<br>Philadelphia, PA 19119<br><br>                Plaintiff,<br><br>    v.<br><br>City of Philadelphia<br>1515 Arch Street<br>Philadelphia, PA 19102<br><br>And<br><br>Officer Lauren Oswald, individ &<br>in her official capacity as a police<br>officer in City of Philadelphia<br>8th and Race Streets<br>Philadelphia, PA 19106<br><br>And<br><br>Philadelphia Police Department<br>8th and Race Streets<br>Philadelphia, PA 19106<br><br>And<br><br>Rite Aid Corporation, Store #2709<br>8243 Stenton Avenue<br>Philadelphia, PA 19150<br><br>And<br><br>John Does, 1-10<br>                Defendants. | CIVIL ACTION NO.:<br><br>**09 - 4826**<br><br>Jury of Twelve (12) Jurors Demanded |

## CIVIL ACTION COMPLAINT

**I. Jurisdiction**

1.  Plaintiff brings this case under federal, state, and constitutional laws and amendments, respectively.

2.  Plaintiff seeks actual, statutory and punitive damages together with attorney's fees and costs, and injunctive relief.

1

3.  Jurisdiction of this matter is conferred upon this Court by 28 U.S.C. §1331; supplemental jurisdiction over Plaintiff's state law claims granted by 28 U.S.C. §1367.

4.  Venue lies in this judicial district in that the events that gave rise to this claim occurred here, and one of the Defendants do business here.

**II. Parties**

5.  Plaintiff, Earl Williams, is an adult individual and citizen, and African American, residing at the above captioned address.

6.  Defendant, City of Philadelphia ("City"), is a municipality registered to transact business in the Commonwealth of Pennsylvania, with agents authorized to receive service of process at the above-listed address, and owns, operates, manages, directs and controls the Philadelphia Police Department, which employs the above-captioned defendant police officer.

7.  Defendant, Officer Lauren Oswald ("Oswald"), at all times material, was and/or is a police officer with Philadelphia Police Department, acting under color of state law, pursuant to either official policy, custom or practice, in both an individual and/or official capacity. This Defendant was acting in concert and conspiracy with other employees/agents of City, aiding and abetting same.

8.  Defendant, Philadelphia Police Department ("PPD"), at all times material is responsible for the training and conduct of its employees, and authorizes and supports their actions under color of state law pursuant to either official policy, custom or practice.

9.  Defendant, Rite Aid Corporation, Store # 2709 ("Rite Aid"), is a corporation duly organized and registered to transact business in the State of Delaware, with agents authorized to receive service of process at the above-listed address and a principal place of business at 30 Hunter Lane, Camp Hill, PA 17011.

10.  Defendants, John Does, 1-10, at all times material, was and/or is police officers with Philadelphia Police Department and/or employee of City of Philadelphia and/or employee of Rite Aid, acting under color of state law, pursuant to either the official policy, custom or practice in both an individual and/or official capacity.

### III.  Facts

11. On or about April 22, 2008, Plaintiff entered Defendant, Rite-Aid, located at the above address.

12. Plaintiff went into Rite-Aid to purchase eye drops prior to his routine morning exercise, at or about 8 a.m.

13. When Plaintiff entered the store, Plaintiff had a backpack with him that held a change of clothes to change into after his workout.

14. Plaintiff paid for his eye drops and then remembered that he needed detergent.

15. Upon arriving in the detergent aisle of Rite-Aid, Plaintiff found a half-empty bottle.

16. As was Plaintiff's custom at work, environmental services at Community College of Philadelphia (non-party), Plaintiff began to pour another bottle of detergent into the bottle Plaintiff found half-empty.

17. As Plaintiff was pouring the detergent, Defendant, John Doe, a Rite-Aid security guard ("guard") approached Plaintiff and called Plaintiff a thief.

18. Plaintiff attempted to explain his inadvertent habit to the guard, but the guard refused to listen to Plaintiff instead continuing to call Plaintiff a thief.

19. Upon information and belief, the guard refused to listen to Plaintiff and continually called him a thief because Plaintiff is an African-American male. Plaintiff was carrying a backpack.

20. Plaintiff attempted to show the guard that Plaintiff had money to pay for the detergent.

21. As the guard continued to yell at Plaintiff, Plaintiff told the guard that he would pay for both bottles of detergent to clear up the guard's misconception.

22. To show his good faith, Plaintiff took both bottles of detergent to the check-out counter.

23. Once at the counter, the guard ordered the cashier to not ring Plaintiff up and that Plaintiff was a thief.

24. Plaintiff left the two (2) bottles of detergent on the counter and left the Rite-Aid.

25. At no time did Plaintiff leave Rite Aid with any unpaid for merchandise.

26. Due to the guard's continual yelling that Plaintiff was a thief and the guard's refusal to allow Plaintiff to pay for the detergent, Plaintiff dialed 9-1-1.

27. Plaintiff was told that someone was on their way and that Plaintiff should stay where he was to get the situation resolved.

28. Plaintiff waited for the arrival of the police outside the Rite-Aid, in the parking lot.

29. As Plaintiff waited for the police, the guard came out side, repeatedly called Plaintiff's mother a "bitch," threatened Plaintiff with a pole, and tried to provoke Plaintiff to hit the guard.

30. After Plaintiff refused the guard, the guard went back inside Rite-Aid.

31. Soon thereafter, Oswald, a police officer with PPD, arrived on the scene.

32. When Oswald arrived, Plaintiff attempted to speak to her.

33. Oswald told Plaintiff to follow her into Rite-Aid.

34. Once inside, Plaintiff attempted to tell Oswald his version of the events.

35. Oswald told Plaintiff to be quiet and asked the guard what had occurred.

36. The guard responded to Oswald by stating that Plaintiff had brought an empty detergent bottle in and was attempting to fill that bottle up.

37. Plaintiff attempted to speak to Oswald, but Oswald repeatedly told Plaintiff to "hush."

38. Despite the fact that Plaintiff had called 9-1-1 and remained at Rite Aid until the police arrived, Oswald refused to speak with Plaintiff.

39. After hearing the guard's version of events, Oswald told Plaintiff to drop his bags and turn around.

40. At this point, Oswald tightly handcuffed Plaintiff.

41.   Oswald searched Plaintiff's backpack, which contained a towel, cocoa butter, sneakers, a shirt, a bottle of water, and the previously purchased eye drops.

42.   Plaintiff again attempted to speak to Oswald, who told him to shut up and that Plaintiff would be taken to PPD's 35th District and Plaintiff would be able to speak with the detectives there.

43.   When Oswald arrested Plaintiff, she did not read him his Miranda rights nor tell Plaintiff his charges.

44.   Oswald took Plaintiff to the 35th District and left Plaintiff handcuffed on a bench for approximately one (1) hour.

45.   When Plaintiff attempted to speak to Oswald, Oswald would repeatedly tell Plaintiff to "shut up."

46.   After sitting on the bench for an hour, Plaintiff had a mug shot taken, was fingerprinted, and placed into a holding cell.

47.   Plaintiff remained in the holding cell until after midnight (12 a.m.)

48.   At that point, Plaintiff was taken from the holding cell and brought before Judge Francis Rebstock via a video conference.

49.   Judge Rebstock read the charges to Plaintiff, expressed disbelief that Plaintiff had been arrested on these charges and that the situation had not been resolved at the store, released Plaintiff on his own recognizance, and told Plaintiff to retain the Public Defender's office.

50.   Oswald charged Plaintiff with eight (8) counts, including robbery (18 P.C.S. § 3701 (a)(1)(i)), terroristic threats (18 P.C.S. §2706 (a)(1)), simple assault (18 P.C.S. §2701(a)), recklessly endangering another person (18 P.C.S. §2705), criminal attempt theft by unlawful

taking (18 P.C.S. §901(a)), criminal attempt receiving stolen property (18 P.C.S. §901(a)), retail theft (18 P.C.S. §3929(a)(1)), and disorderly conduct (18P.C.S. §5503(a)).

51.     Robbery, as defined by 18 P.C.S. § 3701 (a)(1)(i) requires the infliction of serous bodily injury on another.

52.     Plaintiff did not inflict serious bodily injury on another, nor was there probable cause to believe that Plaintiff had inflicted serious bodily injury.

53.     Further, Plaintiff did not leave the premises with any merchandise nor was there probable cause to believe so.

54.     A terroristic threat, as defined by 18 P.C.S. §2706 (a)(1) requires a threat to commit any crime of violence with intent to terrorize another.

55.     Plaintiff did not threaten to commit a crime of violence with the intent to terrorize another nor was there probable cause to believe that Plaintiff threatened to commit a crime of violence with the intent to terrorize another.

56.     Simple assault, as defined by 18 P.C.S. §2701(a) requires (1) an attempt to cause or intentionally, knowingly or recklessly cause bodily injury to another; (2) negligently cause bodily injury to another with a deadly weapon; (3) attempt by physical menace to put another in fear of imminent serious bodily injury; or (4) conceal or attempt to conceal a hypodermic needle on his person and intentionally or knowingly penetrate a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

57.     Plaintiff did not attempt to cause or intentionally, knowingly or recklessly causes bodily injury to another, negligently cause bodily injury to another with a deadly weapon, attempt by

6

physical menace to put another in fear of imminent serious bodily injury, or conceal or attempt to conceal a hypodermic needle on his person nor was there probable cause to believe that he did.

58. Reckless endangerment, as defined by 18 P.C.S. §2705 requires that an individual recklessly engage in conduct which places or may place another person in danger of death or serious bodily injury.

59. Plaintiff did not engage in conduct that placed another in danger of death or serious bodily injury, nor was there probable cause to believe that Plaintiff did.

60. Criminal attempt, for both theft by unlawful taking and receiving stolen property, requires intent to commit a specific crime. 18 P.C.S. §901(a)

61. Plaintiff did not intend to commit a specific crime nor was there any probable cause that Plaintiff had any criminal intent.

62. Retail theft, as defined by 18 P.C.S. §3929(a)(1) requires the taking possession of, carrying away, transfer or cause to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof.

63. Plaintiff did not take possession, transfer, or carry away any merchandise with the intent to deprive the merchant of the possession without paying the full retail value, nor was to probable cause to belief Plaintiff intended to do so as Plaintiff attempted to pay for the detergent and did not leave the premises.

64. On or about April 29, 2008, Plaintiff arrived at Broad and Champlost for his preliminary hearing, only to have the hearing continued due to the failure of the prosecution's witness, the guard, to appear.

7

65. To attend the above hearing, Plaintiff had to take the day off from work.

66. On or about July 17, 2008, Plaintiff again appeared at Broad and Champlost for his preliminary hearing only to have the hearing continued again due to the failure of the prosecution's witness to appear.

67. To attend the above hearing, Plaintiff had to take the day off from work.

68. On or about October 16, 2008, Plaintiff again appeared at Broad and Champlost for his preliminary hearing.

69. At this hearing, all the charges against Plaintiff were withdrawn ("Nolle Prosequi"), officially ending the matter in Plaintiff's favor.

70. Due to the above arrest and continued prosecution, Plaintiff lived with stress for approximately six (6) months, resulting in Plaintiff's inability to sleep, nightmares, and fear of law enforcement officers.

71. Oswald and the guard falsely accused, arrested and prosecuted Plaintiff due to his race.

IV. **Causes of Action**

**COUNT I**
**CIVIL RIGHTS VIOLATIONS**

72. Plaintiffs incorporate paragraphs 1-60 as if same were fully set forth at length herein.

73. As a direct and proximate result of Defendants' conduct, committed under color of state law, Plaintiff was deprived of the right to be free of malicious prosecution, false arrest, wrongful imprisonment, equal protection violation, and his right to due process of law. As a result, Plaintiff suffered and continues to suffer harm, in violation of his rights under the laws and Constitution of the United States of America, in particular the Fourth and Fourteenth Amendments thereto, and Title 42 U.S.C. §1983, et seq., as well as their corollaries under the statutes Commonwealth of Pennsylvania.

74. The actions described herein of Defendants were so malicious, intentional, and displayed with a reckless indifference to the rights, safety and well being of the Plaintiff, that imposition of punitive damages are warranted.

## COUNT II
### CIVIL RIGHTS VIOLATION-MONELL
*Plaintiff v. City & PPD*

75. Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

76. Prior to the events described herein, Defendants', City and PPD, developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional right of persons within the geographic and jurisdictional limits of the Commonwealth of Pennsylvania, which caused violations of Plaintiff's constitutional and other rights.

77. Specifically, Defendants failed to adequately and properly supervise and train in various aspects of law enforcement, criminal prosecution procedure and substance, including, but not limited to, the nature and existence of good cause, evaluation of character, the requirement of medical treatment, and the laws of the United States, Commonwealth of Pennsylvania and State of Maryland, and otherwise.

78. The actions and conduct of Defendant, Oswald, was caused by the failure of City, with deliberate indifference, to properly train, control or supervise these police officers and/or detectives with respect to their investigative power in accordance with the United States and Pennsylvania Constitutions.

79. The above described acts or omissions by Defendants, demonstrated a deliberate indifference to the rights of those within Pennsylvania, such as Plaintiff, and were the cause of the violations of Plaintiff's rights as set forth herein.

### COUNT III
### State Law Claim – False Arrest/Wrongful Imprisonment
*Plaintiff v. Oswald and Rite Aid*

80. Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

81. The aforementioned actions of Defendants directly resulted in Plaintiff's arrest and detention without probable cause.

82. Defendants' actions were willful.

83. Defendants' actions were malicious as Defendants knew that Plaintiff had not taken any merchandise and were acting due to Plaintiff's race.

84. Defendants' action constitutes the state claims for false arrest and false imprisonment.

85. As a direct result of Defendant's actions, Plaintiff was arrested and imprisoned by PPD.

### COUNT IV
### State Law Claim – Malicious Prosecution
*Plaintiff v. Oswald and Rite Aid*

86. Paragraphs above are incorporated by reference as if fully set forth at length herein and below.

87. Plaintiff was arrested by Defendants without probable cause, provided a false affidavit.

88. Defendants' actions were willful.

89. The Criminal prosecution ended in Plaintiff's favor.

### COUNT V
### PUNITIVE DAMAGES
### (PLAINTIFF V. DEFENDANT OSWALD, INDIVIDUALLY & RITE AID)

90. Plaintiff incorporate paragraphs 1-90 as if same were fully set forth at length herein.

91. The actions and misconduct set forth above of Defendants was extreme and outrageous and done intentionally and/or recklessly and/or maliciously by Defendants against Plaintiff.

92. Said actions and misconduct were done with bad motives and in wanton, willful and reckless disregard for the rights of Plaintiff.

93. As was known to Defendants, Plaintiff did not take merchandise, leave the premises, nor threaten anyone yet Defendants filed charges and continued the prosecution of Plaintiff for approximately six (6) months.

94. Plaintiff herewith avers that Punitive Damages are warranted by the aforesaid conduct and actions and as a result of the aforementioned conduct, which is herewith incorporated by reference.

V.   **Prayer for Relief**

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of $75,000.00, plus punitive damages (in excess of $250,000.00) against Defendants individually, jointly and/or severally, attorney's fees and costs, statutory, injunctive and such other relief and costs this Honorable Court deems necessary and just.

WEISBERG LAW, P.C.

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG
REBECCA M. STEIGER
Attorneys for Plaintiffs