IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EARL WILLIAMS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | No. 09-4826 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                              October 22, 2010

Plaintiff Earl Williams claims that Defendants violated his constitutional rights when he was arrested while attempting to steal detergent from a drug store. Defendant Rite Aid filed a motion for summary judgment to which Williams has responded. In his response, Williams withdrew all of his federal claims with the exception of claims under 42 U.S.C. § 1983 against Rite Aid and Officer Lauren Oswald in her individual capacity. The Court will grant Rite Aid's motion and decline to exercise supplemental jurisdiction over Williams's pendent state law tort claims.

**I.     BACKGROUND**

Earl Williams resides in Philadelphia, Pennsylvania. (Mot. of Def. Rite Aid Corp., Store #2709 for Summ. J. Ex. A [Williams Dep.] at 4.) He works in housekeeping for Philadelphia Community College. (*Id*. at 13.) Williams's only criminal history is the arrest at issue in this case. (*Id*. at 11.)

On April 22, 2008, Williams took the day off from work and planned to jog with a friend in the Valley Green area of Philadelphia. (*Id*. at 17.) Williams stopped at a Rite Aid that

morning to purchase eye drops prior to his run. (*Id*. at 19-20.) When he entered the Rite Aid, Williams was carrying a backpack containing a towel and a change of clothes. (*Id*. at 48.) Williams decided he also wanted to buy detergent after he purchased the eye drops. (*Id*. at 20-21.) He noticed that one of the detergent bottles on the shelf in the detergent aisle was half full. (*Id*. at 25.) In keeping with his "instinct" as a housekeeping worker, Williams consolidated that bottle with the contents of another partially full bottle of detergent he found on the same shelf. (*Id*. at 25-26.) Both bottles were unsealed when he found them, and contained the same brand of detergent. (*Id*. at 26-27.)

A Rite Aid security guard saw Williams transfer the detergent from one bottle to another and accused him of stealing. (*Id*. at 29-30.) Williams showed the guard his identification, cash, and a Visa card, and offered to pay for both bottles of detergent. (*Id*.) The guard instructed the cashier not to "ring up" the detergent and followed Williams out of the store. (*Id*. at 33.)

The guard carried a large metal pole. (*Id*. at 32-33) As he followed Williams onto the street, he threatened Williams with the pole while goading him to fight. (*Id*. at 33-34.) Neither man made physical contact with the other during this exchange. (*Id*. at 34-35.) Williams then dialed 911. (*Id*. at 35.)

The 911 dispatcher told Williams to remain at the Rite Aid. (*Id*.) Officer Lauren Oswald subsequently arrived at the store. (*Id*. at 35-36.) Oswald refused to listen to Williams and instead asked the guard what had happened. (*Id*. at 37.) The guard told Oswald that Williams had "put stuff in the bag." (*Id*.) Oswald asked if the guard wanted to press charges. (*Id*. at 38.) When the guard answered "yes," Oswald arrested Williams. (*Id*.) Williams notes that he was never detained by Rite Aid and that Rite Aid did nothing to aid his arrest or prosecution apart

from "telling their side of the story." (*Id*. at 38, 64.)

Oswald took Williams to the Philadelphia Police Department's 35th District for processing. (*Id*. at 39.) Oswald did not read Williams his rights; she refused to speak with Williams and neither questioned him nor responded to his attempts to explain the incident apart from telling him to be quiet. (*Id*.; Compl. ¶¶ 43, 45.) At the station, Oswald waited in a cell until two o'clock the following morning. (Williams Dep. 45.) He then discovered that he had been charged with eight offenses, including robbery, terroristic threats, simple assault, recklessly endangering another person, attempted theft, attempt to receive stolen property, retail theft, and disorderly conduct. (Compl. ¶ 50.) These charges were eventually dropped when the prosecution's witness, the Rite Aid security guard, repeatedly failed to appear at Williams's preliminary hearing. (Williams Dep. 45).

Williams complains that this episode caused him stress, insomnia, and nightmares, and that he now fears law enforcement officers. (Compl. ¶ 70.) He incurred no medical bills as a result of this incident. (Williams Dep. 58.) However, Williams claims that he was forced to use vacation days to attend three hearings which had to be rescheduled due to the guard's failure to appear in court. (*Id*. at 45.)

Williams originally sought compensatory damages in excess of $75,000 and punitive damages in excess of $250,000 on federal claims against all defendants under 42 U.S.C. § 1983, and state-law claims for false arrest, wrongful imprisonment and malicious prosecution against Oswald and Rite Aid. However, he has now withdrawn all but his § 1983 claim against Rite Aid and pendent Pennsylvania tort claims. (Pl.'s Resp. in Opp'n to Def. Rite Aid's Mot. for Summ. J. [Pl.'s Resp.] at 4.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.  DISCUSSION

The sole remaining federal causes of action are Williams's § 1983 claims against Rite Aid and Oswald in her individual capacity. 42 U.S.C. § 1983 affords a private right of action to those deprived of federal rights under color of law. A plaintiff seeking to recover under § 1983 must establish that he "was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

The Court's review of the record reveals that no reasonable jury could return a verdict for

4

Williams on his federal claim against Rite Aid because Rite Aid is not a state actor. Williams's federal claims against Oswald, which are grounded in theories of malicious prosecution, false arrest and false imprisonment, must also fail as the undisputed facts in the record indicate that Oswald had probable cause to arrest Williams. The Court will decline to exercise supplemental jurisdiction over Williams's pendent state law claims.

### A.     Williams's Federal Claim Against Rite Aid

Williams's § 1983 claim against Rite Aid must fail because Rite Aid is not a state actor. A private entity is a state actor for the purposes of a § 1983 claim only when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the state itself." *Kach*, 589 F.3d at 646 (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). To determine whether such a "close nexus" exists, the Court must consider: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646.

The Third Circuit offers additional guidance for shoplifting cases, providing "that a store and its employees cannot be held liable under § 1983 unless: (1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." *Lonergan v. Rite Aid Corp.*, Civ. A. No. 09-3301, 2010 WL 1047893, at *3 (E.D. Pa. Mar. 15, 2010) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81 (3d Cir. 1984)).

Williams offers no evidence that Rite Aid and the Philadelphia Police Department have reached any such agreement.  Indeed, Williams testified that Rite Aid's security guard allowed him to leave the store after identifying him as a suspected shoplifter.  (*See* Williams Dep. 43.)  The police only became involved when Williams dialed 911.  (*Id*. at 35, 43-44.)  Williams confirmed at his deposition that Rite Aid's participation in his arrest and prosecution consisted solely of the security guard "telling their side of the story." (*Id*. at 38, 64.)  The Court will therefore dismiss Williams's § 1983 claim against Rite Aid because he cannot show that Rite Aid is a state actor under § 1983.

### B.   Williams's Federal Claim Against Oswald

Williams maintains his § 1983 claims against Oswald in her individual capacity.  An individual capacity suit under § 1983 "alleges wrongful conduct taken under color of state law and seeks relief from the defendant personally."  *Whaumbush v. City of Phila.*, Civ. A. No. 09-6066, 2010 WL 4054334, at *6 (E.D. Pa. Oct. 15, 2010).  Williams seeks to hold Oswald liable for depriving him "of the right to be free of malicious prosecution, false arrest, wrongful imprisonment," and related equal protection and due process violations.  (Compl. ¶ 73.)  The Court will address each theory in turn.

#### 1.   *Summary Judgment Sua Sponte*

The City of Philadelphia filed an answer on behalf of itself, the Philadelphia Police Department and Oswald on December 30, 2009.  These defendants, however, never moved to dismiss Williams's complaint or for summary judgment.  A discussion of the Court's authority to address Williams's claims against Oswald on its own initiative is thus an appropriate preamble to the Court's analysis on this point.

In some instances, a district court may exercise its discretion to grant summary judgment sua sponte. *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 223-25 (3d Cir. 2004). As the Third Circuit has observed, it is

> entirely appropriate for courts to recognize a procedure allowing them to grant summary judgment on their own initiative, for courts' resources are limited and they should not be required to use those resources to conduct an unnecessary trial merely because a party entitled to a summary judgment in whole or in part does not seek that outcome to litigation.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 224 (3d Cir. 2009). The *Gibson* court also sounded a "cautionary note" that parties should, when possible, have notice when a district court is considering a sua sponte grant of summary judgment. In keeping with this guidance, the Court ordered Williams to submit briefing as to Oswald's liability. Williams's submission confirms that his claims against Oswald cannot survive a summary judgment analysis.

### 2. Malicious Prosecution

A malicious prosecution claim under § 1983 requires a showing that: (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). The Court will grant summary judgment as to this claim because Williams cannot establish that there was a lack of probable cause for his arrest.

A police officer makes an arrest with probable cause "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude than an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). It is well-established that "the report of a seemingly trustworthy security guard provides probable cause for an arrest." *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006). Williams has introduced no evidence that the guard was not credible; indeed, Williams does not dispute that the guard observed him tampering with two bottles of detergent. (Williams Dep. 29-30, 40.) Williams also confirms that Oswald arrested Williams on the basis of the guard's account of what took place in the store. (*Id*. at 37-38.) Because Oswald had credible information from the guard that Williams engaged in activity constituting retail theft, she had probable cause to arrest Williams.

Williams argues that Oswald is liable for malicious prosecution even if probable cause existed as to the retail theft, there was no probable cause to support an arrest for the additional "violent offenses" with which Williams was charged. (Pl.'s Resp. 12.) The establishment of probable cause as to any one charge is sufficient under these circumstances to defeat Williams's claim for malicious prosecution. *See Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008). Williams's malicious prosecution claim under § 1983 thus cannot proceed.

    3.    *False Arrest and False Imprisonment*

A plaintiff's § 1983 claim that he was unlawfully deprived of his Fourth Amendment rights to be free from false arrest and imprisonment hinges on whether the arresting officers had probable cause to believe the arrestee committed the offense. *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). False arrest and false imprisonment claims overlap in that both require

a showing that the plaintiff was arrested without probable cause; the plaintiff would then have "a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Simpson v. Owner of Dollar Tree Store*, Civ. A. No. 09-6162, 2010 WL 3364200, at *6 (E.D. Pa.. Aug. 23, 2010) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). As noted above, the Court need only find that probable cause existed as to any offense that could be charged under the circumstances; "there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007).

Both Williams's false arrest and false imprisonment claims fail because, as discussed above, Oswald had probable cause to arrest Williams for retail theft. Although Williams argues that his willingness to pay for both bottles demonstrates that he did not have the intent to steal required under the statute, an objective consideration of his actions must lead to the conclusion that there was probable cause to arrest Williams under Pennsylvania's Retail Theft Act. *See* 18 Pa. Cons. Stat. § 3929(a)(3).

### 4. Related Constitutional Claims

Williams claims violations of his rights to equal protection and to due process of law as a result of his arrest. However, the Supreme Court has held that due process analysis is inappropriate where a specific constitutional amendment governs state behavior. *Berg v. County of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000). Because Williams's claims for malicious prosecution, false imprisonment and false arrest all invoke the Fourth Amendment, Williams cannot "resort to Fourteenth Amendment due process principles." *Martinez v. Warner*, Civ. A. No. 07-3213, 2008 WL 2331957, at *16 (E.D. Pa. June 5, 2008). Because a procedural due

9

process claim is an "inappropriate vehicle by which to seek vindication for a purportedly unlawful arrest," the Court will grant summary judgment on this claim. *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009).

### C. Williams's State Law Claims

Williams thus fails to present any viable federal cause of action; only his state law tort claims remain. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. As Williams's claims have been dismissed before trial and considerations of judicial economy, convenience, and fairness to the parties do not dictate otherwise, the court declines to exercise supplemental jurisdiction. *Cf. Cole v. Toll*, Civ. A. No. 07-0590, 2007 WL 4105382 (E.D. Pa. Nov. 16, 2007) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

## IV. CONCLUSION

The Court will enter summary judgment against Williams on his federal claims for the reasons discussed above. As only Williams's pendent state law claims remain, the Court declines to exercise its supplemental jurisdiction. An Order consistent with this Memorandum will be docketed separately.